762 So.2d 186 (2000)
Loyd Irvin SOWERS and Johnnie Linda Rutledge Sowers, Plaintiffs-Appellees,
v.
DIXIE SHELL HOMES OF AMERICA, INC., Defendant-Appellant.
No. 33,390-CA.
Court of Appeal of Louisiana, Second Circuit.
May 15, 2000.
Writ Denied September 22, 2000.
*187 Richard L. Fewell, Jr., West Monroe, Counsel for Appellant.
Bobby L. Culpepper & Associates by Bobby L. Culpepper, Teresa C. Carroll, Jonesboro, Counsel for Appellee.
Before BROWN, PEATROSS, KOSTELKA, JJ.
KOSTELKA, J.
Defendant, the builder of plaintiffs' home, appeals a trial court judgment awarding extensive damages for faulty workmanship and defects discovered in the house constructed for plaintiffs. Finding the New Home Warranty Act to be the exclusive remedy between the parties for the claims made in this action, we reduce the damage award to reflect those amounts recoverable under the Act. In all other respects, we affirm.

Facts and Procedural History
On December 30, 1994, Loyd Irvin Sowers ("Sowers") and his wife, Johnnie Linda Rutledge Sowers (collectively, "the Sowerses"), contracted with Dixie Shell Homes of America, Inc. ("Dixie") to build a shell home on land they owned in Jackson Parish. For the contract price of $68,000, *188 Dixie agreed to build its "Country Classic" style home and to install standard plumbing for two and one-half baths as well as wiring for the home. Dixie additionally furnished, but did not install, sheetrock, interior doors, and insulation; the builder also provided an allowance for kitchen cabinets. Dixie completed its portion of the construction within ninety to one hundred and twenty days after the contract date.
Even as early as during construction, Sowers began noticing problems with the structure being erected by Dixie. Particularly, he observed rain puddling on the floors and studs placed incorrectly making the walls lean. Sowers promptly began complaining to various representatives of Dixie. Those complaints continued and were followed by Dixie's several attempts to rectify the reported problems. Finally, in August 1998, Sowers and his wife filed suit against Dixie contending that the extensive problems had not been corrected satisfactorily. Attached to their petition, the Sowerses included a list of the various defects they had discovered in their home, generally relating to problems with and the inadequacy of the foundation as well as movement in various portions of the house.
After trial on the merits, the lower court determined that Dixie had not constructed the house in accord with either the prevailing building codes or generally accepted building principles. For damages, the trial court fashioned a redhibition-style remedy. Dixie was ordered to refund to the Sowerses all payments made on the house ($29,529.95); to pay an additional sum of $25,470.55, approximating that amount the Sowerses spent to finish the home; to secure a cancellation of the mortgage; to remove the structure from the Sowerses' property; and to pay attorney fees in the amount of $5,000. However, the court rejected the Sowerses' claims for mental anguish, humiliation, and embarrassment.
Dixie appealed contending that the New Home Warranty Act ("NHWA") was the exclusive remedy available to the Sowerses. Dixie argues that under the NHWA, a portion of plaintiffs' claims has prescribed, the Sowerses did not carry their burden of proving "major structural defects" present in the home, and that the damages exceed those which are allowed under the NHWA.

Exclusivity of the NHWA
Per La. R.S. 9:3150, the NHWA provides the exclusive remedies, warranties, and prescriptive periods between the builder and owner relative to home construction. No other provisions of law relative to warranties and redhibitory vices and defects shall apply. Where the cause of action did not wholly arise from construction defects, violations of the building code, or poor workmanship, Louisiana courts have determined the NHWA was not the sole remedy available to the home owner. See, e.g., Thorn v. Caskey, 32,310 (La.App.2d Cir.09/22/99), 745 So.2d 653 (in addition to construction defects, for which the NHWA was the exclusive remedy, plaintiff complained that the builder did not complete the construction of the house; breach of contract law applied to damages arising from the builder's failure to complete the project); Squyres v. Nationwide Housing, 98-8 (La.App. 3d Cir.06/03/98), 715 So.2d 538 (where the seller of a manufactured home was not the builder, NHWA was not the exclusive remedy between the owner and seller); Melancon v. Sunshine Construction, 97-1167 (La.App. 1st Cir. 05/15/98), 712 So.2d 1011 (water damage sustained by owner's property was caused by vandalism and was not a defect in construction which would fall under the NHWA); Leon v. Deters Custom Homes, 97-0772 (La.App. 1st Cir. 04/08/98), 711 So.2d 346 (NHWA was not applicable where damages to the owner's house were not caused by defects in the construction of his house but in drainage problems the builder created upon expansion of the subdivision).
In the case sub judice, however, the Sowerses' complaints all concern defects arising from the poor workmanship *189 in the construction of their home. It is under circumstances such as these that the NHWA is, indeed, the owner's exclusive remedy against the builder.

Prescription
Per the NHWA (particularly La. R.S. 9:3144A) every builder warrants the following to the owner, subject to certain exclusions:
(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
(3) Ten years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
Any action to enforce a warranty provided in the NHWA shall prescribe thirty days after the expiration of the time period appropriate for the warranty violation claimed. La. R.S. 9:3146. Inasmuch as the Sowerses did not file their suit until over three years after the warranty commencement date, Dixie contends that the Sowerses are limited to claims of major structural defects, i.e., those which make the house unsafe, unsanitary, or otherwise unlivable.[1]
However, Dixie failed to raise the issue of prescription by any means other than post-trial and appellate brief. Although an exception of prescription may be filed for the first time in an appellate court, it must be presented in a formal pleading prior to the submission of the case for a decision. The peremptory exception of prescription cannot be injected as an issue in the case solely by brief or oral argument. La. C.C.P. arts. 927, 2163; Steed v. St. Paul's UMC, 31,521 (La.App. 2d Cir. 02/24/99), 728 So.2d 931, writ denied, 99-0877 (La.05/07/99), 740 So.2d 1290; Hayes v. Hayes, 607 So.2d 3 (La. App. 2d Cir.1992); Tucker v. Louisiana, Dept. of Revenue and Taxation, 96-2740 (La.App. 1st Cir. 02/20/98), 708 So.2d 782. In that Dixie filed no formal pleading raising the exception at either the trial or appellate court, this argument is not before this court at this time. Thus, we consider the Sowerses' claims under La. R.S. 9:3144A(1) as not prescribed.[2]

Sufficiency of the Evidence
Under the NHWA, the Sowerses bear the burden of proving that their home contains any defect caused by noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards. La. R.S. 9:3144A(1); also cf. Graf v. Jim Walter Homes, Inc., 97-1143 (La.App. 1st Cir.05/15/98), 713 So.2d 682. In this regard, the trial court found the testimony of *190 John Ed Quarles ("Quarles") to be particularly persuasive.
Quarles, the Sowerses' expert in home construction who had conducted a thorough inspection approximately seven months prior to trial, testified extensively about the condition of the house. He described a house that was built out of level and had been "framed up crooked." Walls leaned; siding had twisted; the chimney was slanted. Inasmuch as the house was built out of plumb, sheetrock had cracked extensively within the home as well. The Sowerses experienced problems with the doors functioning improperly. Quarles additionally described problems with the foundation system: footings were not dug deep enough; blocks (for the piers) were stacked without mortar between them; piers were leaning; the house was not resting on the provided piers in a number of places. Indeed, Quarles even discovered one wall partition that rested on plywood rather than enforced floor joists. Quarles described the method of extensive repair that the house required. He stated that after the house had been leveled, each wall would have to be taken loose and made plumb. He agreed that it would be difficult to correct the problems.[3] Quarles also discussed the several code violations he had discovered during his inspection. Even Johnny Reeves, the owner of Dixie, agreed that a house built out of plumb would be a violation of the building code.
A district court's findings of fact are not disturbed on appeal unless they are clearly wrong or manifestly erroneous. Stobart v. State through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Our review of the record reveals there is conflicting testimony concerning many of the deficiencies described by Quarles and found by the trial court to exist; thus, the record presents two permissible views of the evidence. When there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Graf, supra. Furthermore, where expert witnesses present differing testimony, it is the responsibility of the trier of fact to determine which evidence is the most credible. Graf, supra. We cannot say that the trial court's decision to believe Quarles' testimony over that of the other expert witnesses presents any manifest error.

Damages
As previously noted, the trial court made extensive awards to the Sowerses. Dixie was ordered to refund to the Sowerses all payments made on the house; to pay an additional sum approximating that amount the Sowerses spent to finish the home; to secure a cancellation of the mortgage; and, to remove the structure from the Sowerses' property. Yet, the NHWA specifically provides that the damages with respect to a single defect shall not exceed the reasonable cost of repair or replacement necessary to cure the defect, and damages with respect to all defects in the home shall not exceed the original purchase price of the home. La. R.S. 9:3149A. Inasmuch as the NHWA provides an exclusive remedy, we are constrained to find that the trial court's method of calculating damages (particularly the refund of payments made, cancellation of the mortgage, and the order to remove the structure) was improper.
The Sowerses presented evidence that it would cost in excess of $5,000 to have the house releveled. An expert witness for Dixie estimated it would cost approximately $2,625 to replace rotten wood on the porch, repair the leaning chimney, patch and repaint the current problems with the sheetrock, and add support for the wall which did not have proper foundation. And, as explained by the Sowerses' expert *191 witnesses, the sheetrock damage would be much more extensive after the house had been leveled. Moreover, Quarles explained the drastic means which would be used in straightening the walls of the home. Inasmuch as these recommended procedures would significantly damage the interior of the home, in fashioning an award we also consider Sowers' testimony that he initially spent over $25,000 finishing the house which was his responsibility under the original contract. We envision that similar costs would necessarily be incurred again once the walls have been taken down and made plumb. Indeed, Quarles anticipated the sheetrock would have to be torn out to effect his straightening project. Thus, we find an award of $35,000 to be more in accord with the purpose of the NHWA. We also affirm the award of $5,000 for attorney fees as provided in La. R.S. 9:3149A.

Conclusion
Accordingly, for the foregoing reasons, the judgment against Dixie is affirmed under the NHWA. Damages are reduced to $35,000 plus the $5,000 previously awarded for attorney fees. Costs of this appeal are assessed equally to the parties.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] "Warranty commencement date" means the date that legal title to a home is conveyed to its initial purchaser or the date the home is first occupied, whichever occurs first. La. R.S. 9:3143(7). In this matter, the warranty commenced in early 1995. "Major structural defect" means any actual physical damage to certain, enumerated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions. See La. R.S. 9:3143(5).
[2] Moreover, the extensive foundation and framing problems outlined by expert testimony could certainly be described as "major structural defects" which would be subject to the ten-year prescriptive period of La. R.S. 9:3144A(3).
[3] At the prompting of the Sowerses' attorney, Quarles agreed that another option would be to tear down the house and rebuild from the ground up. However, the NHWA anticipates repair of defects. See La. R.S. 9:3149A.